MICHELSON LAW GROUP
Randy Michelson (SBN 114095)
Kathryn Zoglin (SBN 121187)
100 Pine Street, Suite 2450
San Francisco, CA 94111
Telephone: 415.512.8600
Facsimile: 415.512.8601
randy.michelson@michelsonlawgroup.com

Attorneys for Stuart Sybersma and Michael Pearson,
Joint Official Liquidators of
American Pegasus SPC

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| In re AMERICAN PEGASUS SPC, | Case No. 11-34429 |
|---|---|
| Debtor. | Chapter 15 |
| | Date: TBD |
| | Time: TBD |
| | Place: Courtroom 23 |
| | Judge: Hon. Thomas E. Carlson |

**JOINT OFFICIAL LIQUIDATORS' BRIEF IN SUPPORT OF (A) VERIFIED PETITION OF AMERICAN PEGASUS SPC FOR RECOGNITION OF FOREIGN PROCEEDING UNDER CHAPTER 15 OF THE BANKRUPTCY CODE AND (B) MOTION FOR PROVISIONAL AND, UPON RECOGNITION, FINAL RELIEF PURSUANT TO SECTIONS 1519, 1521, AND 105(a) OF THE BANKRUPTCY CODE**

# TABLE OF CONTENTS

Page

INTRODUCTION ·································································1

PRELIMINARY STATEMENT ·············································1

FACTS ·············································································5

    I.  Background ································································5

    II.  SEC Findings of Misconduct Against Chui And Others ·······7

    III. Legal Proceedings in the Cayman Islands ···················8

    IV. Legal Proceedings in the United States ······················9

        A.  Synergy Acceptance Corporation's Bankruptcy Case ···9

        B.  LDG and Mr. Carter Refuse to Return American
            Pegasus SPC's Records and Funds Despite Their
            Termination for Failure to Perform Their Servicing
            Duties and Conversion of Funds ···························10

            1.  LDG and Mr. Carter Were Terminated As They
                Failed to Properly Discharge Their Servicing Obligations ···10

            2.  LDG's Post-Termination Misconduct ················11

            3.  LDG's and Mr. Carter's Intransigence Is Detrimental
                to American Pegasus SPC ···························12

JURISDICTION AND VENUE ·············································13

DISCUSSION ····································································13

    I.  The American Pegasus SPC Proceeding In the Cayman Islands
       Meets The Requirements For Recognition As A Foreign Proceeding ···13

      A.  The Cayman Island Proceeding Is A Foreign Proceeding ···13

      B.  The Petitioners Are Foreign Representatives ···········15

      C.  The Cayman Island Proceeding Is a Foreign Main Proceeding ···16

      D.  In the Alternative, the Cayman Islands Proceeding Should Be
         Recognized As A Foreign Nonmain Proceeding ·········19

      E.  The Petition Meets the Filing Requirements of Section 1515 of the
         Bankruptcy Code and of Rule 1007(a)(4) of the Bankruptcy Rules ···20

     F.  Recognition of the Cayman Islands Proceeding Would Not Be Manifestly Contrary to U.S. Public Policy ⋯⋯⋯⋯⋯⋯⋯21

II.  Upon Recognition of the Cayman Island Proceeding As A Foreign Main Proceeding, the Automatic Stay Applies Pursuant to Bankruptcy Code Section 1520(a) ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯21

III.  The Petitioners Request Necessary And Appropriate Relief Pursuant to Section 1521(a) of the Bankruptcy Code ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯22

CONCLUSION ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯25

# TABLE OF AUTHORITIES

Page

C̲ASES

*In re Betcorp Ltd.*, 400 B.R. 266 (Bankr. D. Nev. 2009)............................................. 13, 14, 16, 17

*In re British Am. Ins. Co. Ltd.*, 425 B.R. 884 (Bankr. S.D. Fla. 2010) ................................. 17, 20

*In re British American Isle of Venice (BVI), Ltd.*,
 441 BR 713 (Bankr. S.D. Fla. 2010)............................................................................ 17

*In re Fairfield Sentry Limited*, 440 B.R. 60 (Bankr. S.D.N.Y. 2010),
 *aff'd*, 2011 U.S. Dist. LEXIS 105770 ................................................................. 17

*In re Loy*, 380 B.R. 154 (Bankr. E.D. Va. 2007) ........................................................... 3

*In re Millennium Global Emerging Credit Master Fund Limited*,
 458 B.R. 63, 2011, Bankr. LEXIS 3237 (Bankr. S.D.N.Y. 2011) .................................. 17

*In re Spansion, Inc.*, 418 B.R. 84 (Bankr. D. Del. 2009)................................................ 22

*In re Tri-Continental Exchange Ltd.*, 349 B.R. 627 (Bankr. E.D. Cal. 2006) ...................... 15, 16

S̲TATUTES

11 U.S.C. § 101 ............................................................................................... passim

11 U.S.C. § 362 ..................................................................................................... 24

11 U.S.C. § 1501 ................................................................................................... 21

11 U.S.C. § 1502 ............................................................................................... 16, 19

11 U.S.C. § 1504 ................................................................................................... 13

11 U.S.C. § 1506 ............................................................................................... 13, 21

11 U.S.C. § 1509 ................................................................................................. 3, 13

11 U.S.C. § 1515 ............................................................................................. 3, 13, 20

11 U.S.C. § 1516 ............................................................................................... 13, 16

11 U.S.C. § 1517 ............................................................................................... passim

11 U.S.C. § 1519 ............................................................................................... passim

11 U.S.C. § 1520 ........................................................................................... 13, 21, 25

11 U.S.C. § 1521 ............................................................................................... passim

11 U.S.C. § 1522 ................................................................................................... 23

28 U.S.C. § 1410 ................................................................................................... 13

| | | |
|---|---|---|
| 1 | 28 U.S.C. § 157 ........................................................................................................... | 13 |
| 2 | 28 U.S.C. § 157(b)(2)(p) ............................................................................................. | 13 |
| 3 | 28 U.S.C. § 1334 ......................................................................................................... | 13 |

OTHER AUTHORITIES

| | | |
|---|---|---|
| 5 | Investment Company Act of 1940 ................................................................................ | 7 |
| 6 | SEC Commission's Rules of Practice 102(2) ............................................................. | 13 |
| 7 | Securities Act of 1933, Section 8A ............................................................................. | 7 |
| 8 | Securities Exchange Act of 1934 Section 203(c) ....................................................... | 7 |
| 9 | Securities Exchange Act of 1934 Section 203(f) ....................................................... | 7 |
| 10 | Securities Exchange Act of 1934 Section 203(k) ...................................................... | 7 |

RULES

| | | |
|---|---|---|
| 12 | Federal Rules of Bankruptcy Procedure 1007(a)(4) ........................................... | 3, 20, 21 |
| 13 | Federal Rules of Bankruptcy Procedure 1007(a)(4)(A) ............................................ | 21 |
| 14 | Federal Rules of Bankruptcy Procedure 7007.1 ....................................................... | 21 |
| 15 | Federal Rules of Bankruptcy Procedure 7062 ........................................................... | 24 |

FOREIGN STATUTES

| | | |
|---|---|---|
| 17 | Cayman Islands Companies Law ........................................................................ | passim |

**INTRODUCTION**

Petitioners Stuart Sybersma and Michael Pearson (the "Joint Official Liquidators" or "Petitioners"), each in his capacity as a foreign representative of the liquidation proceeding (the "Cayman Islands Proceeding") of American Pegasus SPC pending before the Grand Court of the Cayman Islands, Financial Services Division ("the Cayman Islands Grand Court"), submit this brief in support of (a) the Verified Petition (the "Verified Petition") of American Pegasus SPC for Recognition of Foreign Proceeding Under Chapter 15 of the Bankruptcy Code and (b) the Motion for Provisional and, Upon Recognition, Final Relief Pursuant to sections 1519, 1521, and 105(a) of the Bankruptcy Code.

**PRELIMINARY STATEMENT**

American Pegasus SPC is a Cayman Islands-based fund that invested approximately $150 million in sub-prime automobile loans and life settlements in the United States. The U.S. Securities and Exchange Commission ("SEC") conducted an investigation and found that the corporate entities American Pegasus LDG, LLC ("LDG") and American Pegasus Investment Management, Inc. ("APIM") as well as individuals, who were contracted as agents in the form of investment managers to manage American Pegasus SPC and its underlying assets, severely mismanaged the funds, including by failing to disclose conflicts of interest, misusing client assets, and engaging in improper self-dealing. In December 2010, the SEC issued a cease-and-desist order against three managers of LDG due to their misconduct and fined them. The SEC also fined LDG and APIM for unearned management fees and issued cease-and-desist orders against the entities as well.

American Pegasus SPC's creditors subsequently initiated liquidation proceedings before the Cayman Islands Grand Court. Petitioners Stuart Sybersma and Michael Pearson were appointed as Joint Official Liquidators to manage American Pegasus SPC's liquidation. Pursuant to the Cayman Islands Grand Court winding up order, the Joint Official Liquidators are working to evaluate the financial affairs of American Pegasus SPC and to liquidate its assets.

The Petitioners seek an order granting recognition of the liquidation proceeding of American Pegasus SPC before the Cayman Islands Grand Court as a "foreign proceeding" under

section 1517 of the Bankruptcy Code so that they may comply with their responsibilities, as ordered by the Cayman Islands Grand Court. They seek recognition in aid of their efforts to recover American SPC's San Francisco- and other U.S.-based records and to manage, administer, and collect American Pegasus SPC's assets, including through pursuit of litigation, if necessary, for ultimate distribution to American Pegasus SPC's creditors and investors in accordance with Cayman Islands insolvency law. Chapter 15 recognition will allow the Joint Official Liquidators to gain and exercise control over American Pegasus SPC's records and assets in the United States, thereby ensuring an orderly and equitable distribution through the Cayman Islands Proceeding in accordance with the Cayman Islands insolvency law.

More specifically, Chapter 15 recognition will provide to the Joint Official Liquidators, or allow the Joint Official Liquidators to seek, relief that includes:

(i)     recovering from LDG, its San Francisco-based former investment manager, the employment of which has been terminated, American Pegasus SPC's records relating to, and the proceeds of, the auto loans and life settlements it owns plus an accounting;

(ii)    providing the Joint Official Liquidators with unchallengeable standing in the United States courts to facilitate their pursuit of claims on behalf of American Pegasus SPC;

(iii)   staying third parties from asserting claims against American Pegasus SPC or its assets in the United States;

(iv)    staying creditors from seeking attachments of litigation recoveries realized in the United States and ensuring that those recoveries are distributed in an orderly and equitable basis in the Cayman Islands Proceeding; and

(v)     affording the Joint Official Liquidators the right to seek discovery concerning American Pegasus SPC's assets (e.g., causes of action against third parties), affairs, rights, obligations or liabilities, including identifying parties that bear liability for American Pegasus SPC's losses and the potential claims against those parties.

Approximately $72 million of outstanding sub-prime auto loans remain uncollected. Absent recognition, the Joint Official Liquidators' ability to pursue and realize recoveries on American Pegasus SPC's assets and claims may be materially compromised.

Among other things, a denial of recognition likely will prevent or delay the Joint Official Liquidators from recovering the records of the auto loans owned by American Pegasus SPC, which, in turn, would adversely affect the collection of payments owed by thousands of borrowers. It also could invite a challenge to the Joint Official Liquidators' standing to prosecute American Pegasus SPC's claims in United States courts,[1] asserted by litigation targets or parties seeking to interfere with a proper distribution of American Pegasus SPC's assets. Such a result would substantially interfere with the Joint Official Liquidators' ability to maximize the assets available for orderly and equitable distribution to American Pegasus SPC's creditors.

All of the requirements for Chapter 15 recognition of the Cayman Island Proceeding as a "foreign proceeding" are satisfied:

(1)     the Cayman Island Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code;

(2)     the Petitioners are "foreign representatives" and "persons" within the meaning of sections 101(24) and (41) of the Bankruptcy Code;

(3)     the Verified Petition meets the filing requirements of section 1515 of the Bankruptcy Code and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and

_____

[1] Section 1509(d) of the Bankruptcy Code provides: "If the court denies recognition under this chapter, the court may issues any appropriate order necessary to prevent the foreign representative from obtaining comity or cooperation from courts in the United States." An exception to the recognition requirement is found in Section 1509(f), which provides that a failure to obtain Chapter 15 recognition "does not affect any right the foreign representative may have to sue in a court in the United States to collect or recover a claim which is property of the debtor." It has been noted, however, that "[t]he legislative history of [Chapter 15] indicates that this exception [in section 1509(f)] is to be narrowly applied." *In re Loy*, 380 B.R. 154, 165 (Bankr. E.D. Va. 2007). Although the Petitioners are not aware of any case holding that a foreign representative *must* obtain Chapter 15 recognition to enable the debtor to prosecute an affirmative claim belonging to it in the United States, and while the Petitioners do not believe such a result follows from the provisions of Chapter 15 (or other Bankruptcy Code provisions) and cases, a denial of the request for recognition of the Cayman Islands Proceeding under Chapter 15 could give rise to wasteful and disruptive litigation and reduce the funds available for American Pegasus SPC's creditors.

(4)     recognition of the Cayman Island Proceeding would not be contrary to U.S. public policy.

Furthermore, the Cayman Islands Proceeding should be accorded recognition as a "foreign main proceeding" under section 1517 of the Bankruptcy Code because the "center of main interests" ("COMI") of American Pegasus SPC is in the Cayman Islands, where its winding up proceeding has been pending since June 1, 2011.

In addition to recognizing the Cayman Island Proceeding as a foreign main proceeding, the Joint Official Liquidators request entry of order directed at LDG, LDG CEO Henry Wolfgang Carter, and all other persons in possession of property of American Pegasus SPC, including without limitation, the auto loan files, the life settlement files and the proceeds of the auto loans, to deliver that property forthwith.

The Joint Official Liquidators initially sought to work with Mr. Carter to assemble an infrastructure that would enable LDG to service the auto loans. It became apparent to the Joint Official Liquidators that Mr. Carter was not able to adequately service the loans. Mr. Carter subsequently became uncooperative with the Joint Official Liquidators and excluded the Joint Official Liquidators from many key decisions that required their approval as authorities over American Pegasus SPC. Mr. Carter strongly opposed moving the loan servicing from LDG to a national debt collection agent and took steps to prevent the Joint Official Liquidators from doing so. In fact, the Joint Official Liquidators, on November 9, 2011, were made aware of an email dated September 2, 2011, where Mr. Carter informed certain American Pegasus SPC investors that he would "*figure out how to make sure that the [Joint Official Liquidators] do not interfere with the recovery efforts*".

LDG and Mr. Carter have failed to deliver *any* proceeds of collections of the auto loans since the Joint Official Liquidators were appointed. Prior to discovering evidence of Mr. Carter's intentions noted in the September 2 email, American Pegasus SPC terminated the contract pursuant to which LDG and Mr. Carter were servicing the American Pegasus SPC loans, effective October 31, 2011. Nevertheless, LDG and Mr. Carter have refused to turn over to the Joint Official Liquidators American Pegasus SPC's auto loan files so that servicing and collection

of the loans can continue by the national servicers the Joint Official Liquidators have retained. Moreover, *after* their termination, LDG and Mr. Carter falsely advised American Pegasus SPC's borrowers that they had assumed the servicing of the loans and directed borrowers to remit loan payments to LDG. They unilaterally, and in direct contradiction of the Joint Official Liquidators' instructions, caused some $95,000 in proceeds from the auction of repossessed vehicles to be diverted from American Pegasus SPC to LDG. They have refused to provide information to the Joint Official Liquidators unless and until LDG is rehired.

The intransigence of LDG and Mr. Carter creates considerable difficulty for the Joint Official Liquidators in transferring the loan servicing to the national servicers the Joint Official Liquidators have retained, specifically on disputed accounts, repossession of vehicles, and reconciliation of customer data. The delay LDG is causing in getting the auto loan files into the hands of capable servicers reduces the expected recovery on these sub-prime loans, to the detriment of the creditors of American Pegasus SPC. Accordingly, Petitioners seek entry of a order directing LDG and Mr. Carter to immediately deliver to them all property of American Pegasus SPC, including without limitation, auto loan and life settlement files and loan proceeds, as well as an accounting.

FACTS

**I.      Background**

American Pegasus SPC is a fund that was incorporated on June 16, 2004, as an exempted segregated portfolio company with limited liability in the Cayman Islands.[2] It is registered as a segregated portfolio company under section 213(1) of the Companies Law (2003 revision) of the Cayman Islands since inception. Its registered office is and always has been located in the Cayman Islands. Its official records are, and since inception were, maintained in the Cayman Islands. Its independent liquidators are located in the Cayman Islands. The majority of its directors from inception to May 2010 were Cayman Islands residents and based in the Cayman Islands. The investments into the underlying portfolios were also promoted as a Cayman Islands fund. Declaration of Michael Pearson in Support of Verified Petition of (a) American

---

[2] The chart attached hereto as Exhibit A summarizes certain key facts and identifies certain key parties in this case.

Pegasus SPC for Recognition of Foreign Proceeding Under Chapter 15 of the Bankruptcy Code and (b) Motion for Provisional and, Upon Recognition, Final Relief Pursuant to Sections 1519, 1521 and 105(a) of the Bankruptcy Code ("Pearson Dec.") ¶¶ 14, 15.

APIM is a Delaware corporation formed in 1997. From 2005 through 2008, APIM was registered as an investment advisor. LDG is a Delaware limited liability company formed in January 2007. Its headquarters is in San Francisco. In August 2008, LDG replaced APIM as the investment manager to American Pegasus SPC and its underlying segregated portfolios including American Pegasus Auto Loan Fund Segregated Portfolio (the "Auto Loan Fund"). From 2007 through 2009, the advisory firms APIM and its successor LDG managed up to $150 million worth of assets that were owned exclusively by American Pegasus SPC and its underlying segregated portfolios. LDG and APIM had no equity interest in American Pegasus SPC or its assets and, upon LDG's termination as of October 31, 2011, had no further contractual relationship. Pearson Dec. ¶¶ 16, 17.

American Pegasus SPC has nine underlying segregated portfolios (the "SPs"). The SPs are not separate legal entities; they represent nine separate share classes of American Pegasus SPC. At inception, the SPs were under the control of the management and directors of American Pegasus SPC. Since the time American Pegasus SPC entered liquidation, American Pegasus SPC and the SPs have been under the control of the Joint Official Liquidators. The SPs invested in sub-prime automobile loans and life settlements. The majority of these assets were held in the Auto Loan Fund. Pearson Dec. ¶ 18.

The 100% management share equity shareholder of American Pegasus SPC is American Pegasus LDG Holdings, LLC. This entity is separate from LDG and is not the same entity that was engaged as the investment manager in 2008. The participating shareholders of American Pegasus SPC are the underlying SP share classes. Pearson Dec. ¶ 19.

Benjamin Chui was the CEO and a managing member of LDG, and he was the CEO and sole owner of APIM from the time it was established. Records indicate that Mr. Chui invested $425,000 in American Pegasus SPC. His management relationship with American

Pegasus SPC ended pursuant to the SEC cease and desist order discussed below.  Pearson Dec. ¶ 20.

In 2007, Synergy Equity LLC, a holding company owned by Mr. Chui, bought Synergy Acceptance Corporation ("Synergy"), a finance company that sold portfolios of sub-prime auto loans and loan servicing to the Auto Loan Fund.  Synergy contracted with American Pegasus SPC to service the auto loans.  Synergy had no equity interest in American Pegasus SPC or any interest in the assets of American Pegasus SPC except for a now terminated contractual obligation to service the loans.  Pearson Dec. ¶ 21.  American Pegasus SPC raised funds from approximately 1,500 to 2,000 investors.  Pearson Dec. ¶ 22.

## II.  SEC Findings Of Misconduct Against Chui And Others

On December 21, 2010, the SEC issued an Order Instituting Administrative and Cease-and-Desist Proceedings pursuant to Section 8A of the Securities Act of 1933, Section 21C of the Security Exchange Act of 1934, Sections 203(e), 203(f), and 203(k) of the Investment Advisers Act of 1940, Section 9(b) of the Investment Company Act of 1940, and Rule 102(e) of the Commission's Rules of Practice, Making Findings, and Imposing Remedial Sanctions and Cease-and-Desist Orders (the "Cease-and-Desist Order").  The SEC concluded that Mr. Chui, Tiffany Mok, and Charles E. Hall, Jr. "failed to disclose conflicts of interest, misused client assets, and engaged in improper self-dealing."  Request for Judicial Notice in Support of (a) Verified Petition of American Pegasus SPC for Recognition of Foreign Proceeding Under Chapter 15 of the Bankruptcy Code and (b) Motion for Provisional and, Upon Recognition, Final Relief Pursuant to Sections 1519, 1521 and 105(a) of the Bankruptcy Code ("RJN") Ex. A, p. 2.

The SEC explained that Synergy Equity LLC, a holding company owned by Mr. Chui, Mr. Hall, and Ms. Mok, bought Synergy, a finance company that was the sole supplier of sub-prime auto loans to the largest of the segregated portfolios, the Auto Loan Fund.  Mr. Chui used approximately $18.5 million from the Auto Loan Fund to purchase Synergy.  He did not disclose this purchase or the conflict of interest to the Auto Loan Fund independent directors of American Pegasus SPC or investors until 2009.  Instead, Mr. Chui falsely told prospective investors that the Auto Loan Fund received financing from companies that were independent of

the advisory firms. Mr. Chui, Mr. Hall, and Ms. Mok thus had a conflict of interest that they failed to disclose for approximately two years. RJN Ex. A, p. 4, ¶ 9 – p. 5, ¶ 13.

The money "loaned" from the Auto Loan Fund was not paid back to it. Instead, Mr. Chui had Synergy retain the payments from the auto loans that should have been paid to the Auto Loan Fund. Mr. Chui also had Synergy run up debts to the Auto Loan Fund as well as having this fund make approximately $12 million in undisclosed loans to the life settlement portfolios, including the Life Settlement Fund he managed, so as to cover the latter's operation costs. As a result, the three individuals profited by having the Auto Loan Fund continue to use their financing company. RJN Ex. A, p. 5, ¶¶ 14 – 16.

The SEC censured Mr. Chui, Ms. Mok, and Mr. Hall, and it ordered that they cease and desist from violating that law. It further barred Mr. Chui from associating with any investment advisor or working for a registered investment company for five years, Mr. Hall for three years, and Ms. Mok for one year. The SEC ordered that LDG "permanently forgive and cancel a total of $850,000 in its claims against the Auto Loan Fund and the American Pegasus Auto Loan (Dist) Fund for accrued but unpaid advisory fees and certain reimbursement." The individuals were ordered to pay substantial fines in addition to being removed from the operations of LDG. RJN Ex. A, pp. 10 - 12.

The SEC was not investigating Mr. Carter and therefore did not report any findings against Mr. Carter. On or about August 2010, Henry Wolfgang Carter presented himself as the General Counsel, and Chief Compliance Officer of LDG. On or about March 8, 2011, Mr. Carter presented himself as the interim Chief Executive Officer of LDG. Mr. Carter was hired by Mr. Chui and the directors of LDG. Pearson Dec. ¶ 20.

III.    **Legal Proceedings In The Cayman Islands**

On June 1, 2011, a Cayman Islands liquidation proceeding was initiated pursuant to the Cayman Islands Companies Law by creditors who lost confidence in the management of American Pegasus SPC and its ability to report to investors and manage the assets for the benefit of creditors and investors. RJN Ex. B, Winding Up Petition. On June 20, 2011, the Cayman Islands Grand Court issued a provisional winding up order and on July 20, 2011, the Cayman

Islands Grand Court issued an Official Winding Up Order that provides that American Pegasus SPC be wound up under the supervision of the Cayman Islands Grand Court pursuant to the Companies Law (2010 Revision) of the Cayman Islands. RJN Ex. C, Provisional Winding Up Order; RJN Ex. D, Winding Up Order, p. 1.

The Cayman Islands Grand Court ordered that Stuart Sybersma and Michael Pearson of Deloitte & Touche, who are based in the Cayman Islands, be "appointed joint official liquidators" of American Pegasus SPC. RJN Ex. D, p. 1, ¶ 2. The Winding Up Order grants the Joint Official Liquidators a range or powers "both within and outside of the Cayman Islands," pursuant to Cayman Islands Companies Law. *Id.*, p. 2, ¶ 3. These powers include, but are not limited to, intervening in any other legal proceedings on behalf of the company, seeking recognition of their appointment from United States courts, carrying on American Pegasus SPC's business as necessary for its beneficial winding up, paying creditors, and dealing with issues relating to the assets and winding up of the company. *Id.* The Joint Official Liquidators are required to file periodic reports to the Cayman Islands Grand Court, the first of which is due January 20, 2012. *Id.* p. 3, ¶ 6.

## IV. Legal Proceedings In The United States

### A. <u>Synergy Acceptance Corporation's Bankruptcy Case</u>

Following notification by Mr. Carter of LDG's intention to terminate the servicing contract with Synergy, on May 3, 2011, Synergy filed a Chapter 11 petition signed by Mr. Chui. Synergy's business was servicing auto loans, the vast majority of which were owned by American Pegasus SPC. Pearson Dec. ¶ 23.

In June 2011, American Pegasus SPC, LDG and the Auto Loan Fund moved for an order compelling Synergy to reject all contracts with them, terminating the automatic stay, and appointing a Chapter 11 trustee. *See* RJN, Ex. E. E. Lynn Schoenmann (the "Trustee") was appointed as the Chapter 11 trustee and, following conversion of the case, became the Chapter 7 trustee.

Pursuant to a Stipulation on Motion for Entry of an Order (1) Compelling the Debtor to Reject all Contracts between the Debtor and American Pegasus; (2) Terminating the

Automatic Stay; and (3) Appointing a Chapter 11 Trustee (the "Stipulation"), approved by the Court on July 13, 2011 in the Synergy Bankruptcy, the Court authorized Synergy to use American Pegasus SPC and LDG to service the auto loans. RJN Ex. E.

B. **LDG and Mr. Carter Refuse to Return American Pegasus SPC's Records and Funds Despite Their Termination for Failure to Perform Servicing Duties and Conversion of Funds**

1. **LDG and Mr. Carter Were Terminated As They Failed to Properly Discharge Their Servicing Obligations**

The Liquidators of American Pegasus SPC initially agreed with Mr. Carter that LDG would service the American Pegasus auto loans and Mr. Carter would report collections and remit proceeds to the Joint Official Liquidators. LDG and Mr. Carter encountered significant difficulties trying to open appropriate bank accounts to receive collections and did not properly discharge their obligations to service the auto loans. First, monthly auto loan payments declined precipitously when LDG and Mr. Carter took over servicing the auto loans. In the period immediately preceding the Trustee's retention of LDG and Mr. Carter pursuant to the Stipulation, average monthly auto loan payments totaled approximately $100,000, which was down from $400,000 during the period prior to 2011. LDG and Mr. Carter, however, reported that they collected average monthly payments of less than $5,000 between June 20, 2011 and August 29, 2011. No further reports have been received. Second, they refused to turn collections over to, account to, or communicate appropriately with their principals, the Joint Official Liquidators. Pearson Dec. ¶¶ 25, 26.

The Joint Official Liquidators terminated LDG as its loan servicer on September 27, 2011, effective October 31, 2011. Pearson Dec. ¶ 8, Ex. B. Because LDG's and Mr. Carter's services were unsatisfactory to her, the Trustee, on Synergy's behalf, terminated the servicing arrangement with LDG on or about October 31, 2011. Declaration of Ron Oliner in Support of Verified Petition of (a) American Pegasus SPC for Recognition of Foreign Proceeding Under Chapter 15 of the Bankruptcy Code and (b) Motion for Provisional and, Upon Recognition, Final Relief Pursuant to Sections 1519, 1521 and 105(a) of the Bankruptcy Code ("Oliner Dec.") ¶ 3. Although his access to the electronic records was discontinued as of

October 13, 2011, Mr. Carter nevertheless has attempted on more than one occasion to gain access to the electronic records through other parties. The Joint Official Liquidators terminated access to LDG due to a lack of communications from Mr. Carter and LDG. *Id.*

The Joint Official Liquidators have learned that LDG and Mr. Carter have converted almost $100,000 in proceeds from the auction by PAR North America ("PAR") of repossessed vehicles that served as American Pegasus SPC's collateral on defaulted auto loans. In direct contravention of the Joint Official Liquidators' instructions to PAR, LDG and Mr. Carter, unilaterally and without any notice to the Joint Official Liquidators, directed PAR on September 26, 2011 to pay to LDG, rather than to SPC, at least $95,523.45 in auction proceeds. This was despite the commitment from the Joint Official Liquidators to make a payment of at least $50,000 to LDG and Mr. Carter to cover arrears and costs. Although Mr. Carter's September 27, 2011 email to PAR states that "we will notify the CI folks" that American Pegasus SPC's funds would be wired to PAR per Mr. Carter's instructions, Mr. Carter never advised the Joint Official Liquidators that he had given that instruction to PAR or that LDG had received American Pegasus SPC's funds. To date, the Joint Official Liquidators have been unable to recover the PAR funds. Pearson Dec. ¶ 30, Ex. E.

## 2. LDG's Post-Termination Misconduct

The misconduct of LDG and Mr. Carter has continued unabated since their termination as servicer. Pearson Dec. ¶¶ 9 – 13, 29 – 32. That misconduct constitutes the immediate catalyst for the filing of the Chapter 15 petition in this case.

First, despite multiple requests that they do so after their termination by the Trustee, LDG and Mr. Carter refused to turn over the loan auto loan records. Pearson Dec. ¶ 9. LDG and Mr. Carter turned over the Synergy records only after the Court had held two hearings and ordered that they immediately do so in its Order Directing American Pegasus LDG and Henry Carter to Turn Over Documents to the Trustee, dated November 14, 2011. Declaration of Randy Michelson in Support of Verified Petition of (a) American Pegasus SPC for Recognition of Foreign Proceeding Under Chapter 15 of the Bankruptcy Code and (b) Motion for Provisional and, Upon Recognition, Final Relief Pursuant to Sections 1519, 1521 and 105(a) of the

Bankruptcy Code ("Michelson Dec.") ¶ 2; RJN Ex. F.  LDG and Mr. Carter have never turned over any of American Pegasus SPC's documents.  Absent the physical loan files, the Joint Official Liquidators' ability to collect the auto loans for the benefit of American SPC's creditors is severely compromised.  Pearson Dec. ¶ 28.

Second, LDG and Mr. Carter refuse to provide information to or account to the Joint Official Liquidators.  As noted, they have never turned over to the Joint Official Liquidators any collections.  Rather, they have told the Petitioners that they refuse to do anything at all unless and until the Joint Official Liquidators agree to retain Mr. Carter at $500 per hour with a $50,000 retainer.  A November 4, 2011 email from LDG, for instance, stated:  "Henry asked me to forward his proposed agreement again.  He will provide the information you request once you have retained his services."  Pearson Dec. ¶ 29.

Finally, after its termination as servicer, LDG apparently sent a letter, dated November 2, 2011 and signed by Mr. Carter, to one or more American Pegasus SPC borrowers.  LDG's letter represented that LDG "has assumed the servicing of your auto loan from Synergy" and directs borrowers to make auto loan payments to LDG.  Pearson Dec. ¶ 31, Ex. F.

Contrary to its written assertion to American Pegasus SPC's borrowers, LDG did not have any authority to act for American Pegasus SPC on November 2, 2011.  *See* Pearson Dec. ¶ 8, Ex. B.  By letter dated November 11, 2011, counsel to the Joint Official Liquidators notified LDG and Mr. Carter that LDG's false statements constitute a breach of LDG's fiduciary and other duties.  She demanded that they cease and desist in that unlawful conduct.  LDG and Mr. Carter have never responded to the November 11 letter.  Michelson Dec. ¶ 3.  Nor have they turned over to the Joint Official Liquidators any collections from American Pegasus SPC loans since their termination as servicer.  Pearson Dec. ¶¶ 7, 32.

### 3. LDG's and Mr. Carter's Intransigence Is Detrimental to American Pegasus SPC

The Joint Official Liquidators have engaged national collection agents to service the American Pegasus SPC loans.  The new servicing agents require the physical loan files to service the auto loans.  The assets will continue to deteriorate until the records are received from

LDG and Mr. Carter. The current auto loans consist of 1200 open (current serviceable loans) and 6000 delinquent (old loans for collection) loans. More loans will move from open to delinquent as time continues without collections, which will result in fewer net recoveries for the benefit of creditors. Pearson Dec. ¶¶ 33, 34.

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and section 1501 of the Bankruptcy Code. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(P). Venue is proper pursuant to 28 U.S.C. § 1410. The statutory predicates for relief requested herein are sections 1504, 1509, 1515, 1516, 1517, 1520 and 1521 of the Bankruptcy Code and Bankruptcy Rule 1007.

## DISCUSSION

**I.     The American Pegasus SPC Proceeding In The Cayman Islands Meets The Requirements For Recognition As A Foreign Proceeding**

The requirements for recognition of a foreign proceeding are set forth in section 1517(a) of the Bankruptcy Code. Section 1517(a) provides:

> (a)     Subject to section 1506, after notice and a hearing, an order recognizing a foreign proceeding shall be entered if —
>
>> (1)  such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;
>> (2)  the foreign representative applying for recognition is a person or body; and
>> (3)  the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a). As set forth below, each requirement for recognition prescribed by section 1517(a), as well as by the Bankruptcy Rules, has been satisfied.

**A.     The Cayman Island Proceeding Is a Foreign Proceeding**

The threshold requirement for recognition of a proceeding is that it must constitute a "foreign proceeding." *See* 11 U.S.C. 1517(a)(1); *see also In re Betcorp Ltd.*, 400 B.R. 266, 275

(Bankr. D. Nev. 2009). A "foreign proceeding" is defined as a "collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23).

The Cayman Islands Proceeding is a "foreign proceeding." The Companies Law is the governing law of corporate insolvency in the Cayman Islands. Its key insolvency procedures include liquidation, creditor arrangement and receiverships. *See* RJN Ex. G (Index and Excerpts of Companies Law [2010 Rev.]), Part V. The Cayman Islands Proceeding is a judicial liquidation proceeding. The Cayman Islands Grand Court's Winding Up Order authorizes the Joint Official Liquidators to exercise a range or powers "both within and outside of the Cayman Islands," as authorized under the Cayman Islands Companies Law. RJN Ex. D, p. 2, ¶ 3. These powers include intervening in any other legal proceedings on behalf of the company, seeking recognition of their appointment from United States courts, carrying on American Pegasus SPC's business as necessary for its beneficial winding up, paying creditors, dealing with issues relating to the assets and winding up of the company, and a range of other duties. RJN Ex. D, pp. 2 - 3, ¶¶ 3 - 5.

"A collective proceeding is one that considers the rights and obligations of all creditors. This is in contrast, for example, to a receivership remedy instigated at the request, and for the benefit, of a single secured creditor." *In re Betcorp Ltd.*, 400 B.R. at 281. Liquidation under the Companies Law is "collective judicial or administrative proceeding" within the meaning of section 101(23) as it is not for the benefit of a single creditor, but rather operates to resolve and determine the rights of all claimants and stakeholders, i.e., the creditor body as a whole. *See* RJN Ex. G, Companies Law §110(1)(a) ("It is the function of an official liquidator [] to collect, realise and distribute the assets of the company to its creditors and, if there is a surplus, to the persons entitled to it. . .") and Third Schedule (powers of liquidators). Accordingly, the Cayman Island Proceeding is a collective proceeding.

The Cayman Islands Proceeding satisfies the requirement that American Pegasus SPC's assets be subject to the control or supervision of a foreign court. *See* Pearson Dec. ¶¶ 3,

14, 15, 36, 37; RJN Ex. D.  A Cayman Islands liquidator acts as an officer of the Cayman Islands courts, and his actions are subject to review and reversal of those courts.  RJN Ex. G, § 108(2) ("Official liquidators are officers of the Court"); *see* §110 and Third Schedule (functions and powers of liquidators).  The Joint Official Liquidators are required file periodic reports to the Cayman Islands Grand Court.  RJN Ex. D, p. 3, ¶ 6.

Thus, the Cayman Island Proceeding constitutes a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code.

### B.    The Petitioners Are Foreign Representatives

A Chapter 15 case must be commenced by a duly appointed and authorized "foreign representative."  The Bankruptcy Code provides that a "foreign representative" is a person "authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding."  11 U.S.C. §101(24).  Pursuant to the Winding Up Order, Petitioners were appointed by the Cayman Islands Grand Court and are duly authorized to act as liquidators of American Pegasus SPC.  RJN Ex. D, p. 1, ¶ 2.  Their powers under the Cayman Islands Companies Law are broad.  *See* RJN Ex. G, Companies Law, § 102(1) (liquidators have the power to investigate company's failure and business of company); § 110 (to collect, realize and distribute the assets of the company to its creditors, report to the creditors on the company's affairs; with court authorization it may bring or defend legal proceedings, carry on the business if necessary), and Third Schedule (powers of liquidators).  The Joint Official Liquidators have custody and control of American Pegasus SPC's assets and have the power to compromise claims; they are authorized expressly to seek recognition of their appointment in the courts of the United States.  RJN Ex. D, p. 2, ¶ 3.  In sum, the Petitioners are duly authorized to act as the foreign representatives of American Pegasus SPC, as defined under section 101(24).  RJN Ex. D, pp. 2 - 3, ¶¶ 3 - 4.  *See In re Tri-Continental Exchange Ltd.*, 349 B.R. 627, 632 (Bankr. E.D. Cal. 2006) ("*Tri-Continental*") (joint liquidators under the law of St. Vincent and the Grenadines are foreign representatives within the meaning of 11 U.S.C. § 101(24)).

Moreover, as section 101(41) defines "person" to include individuals, the Petitioners satisfy the "person" requirement of section 1517(a)(2). *See* 11 U.S.C. § 101(41). This requirement for recognition set forth in section 1517(a)(2) has been met.

**C.      The Cayman Island Proceeding Is a Foreign Main Proceeding**

A foreign proceeding within the meaning of section 101(23) may be recognized as either (1) a "foreign main proceeding" or (2) a "foreign nonmain proceeding," within the meaning of section 1502. 11 U.S.C. §1517(a)(1). Section 1502(4) defines "foreign main proceeding" as "a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4). Section 1517(b)(1) provides that a foreign proceeding "shall be recognized as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1517(b)(1). Thus, where, as here, a foreign proceeding is pending in the country in which the debtor has its COMI, the proceeding shall be recognized as a foreign main proceeding.

While the Bankruptcy Code does not specifically define what constitutes a COMI, section 1516(c) states that COMI is presumed to be the location of the debtor's registered office. 11 U.S.C. § 1516(c). *See Tri-Continental*, 349 B.R. at 635 ("In effect, the registered office (or place of incorporation) is evidence that is probative of, and that may in the absence of other evidence be accepted as proxy for, 'center of main interests.'"). Section 1516(c) thus creates a statutory presumption in favor of the location of the debtor's registered office as the debtor's center of main interests. Bankruptcy courts have also observed that the COMI concept "generally equates with the concept of a 'principal place of business' in United States law." *Tri-Continental*, 349 B.R. at 634.

In making the COMI determination, courts also consider to factors that are objectively "ascertainable, and perceived, by third parties." *In re Betcorp, Ltd.*, 400 B.R. at 290 ("[C]ourts analyze a variety of factors to discern, objectively, where a particular debtor has its principal place of business. This inquiry examines the debtor's administration, management, and operations along with whether reasonable and ordinary third parties can discern or perceive where

the debtor is conducting these various functions"). Furthermore, the case law cites several factors that a court may consider to determine the COMI. One court recently summarized some of them:

> the location of the debtor's headquarters; the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes.

*In re Millennium Global Emerging Credit Master Fund Limited*, 458 B.R. 63, 2011, Bankr. LEXIS 3237, *37-38 (Bankr. S.D.N.Y. 2011) (citations omitted). *Accord In re British American Isle of Venice (BVI), Ltd.* ("*British American Isle*"), 441 BR 713, 720 (Bankr. S.D. Fla. 2010). These factors "are not exclusive factors, nor must they all be met in each case." *British American Isle*, 441 B.R. at 720.

Because an entity's COMI may change over time, courts look to the date the Chapter 15 petition is filed to determine the COMI. *See In re Betcorp Ltd.*, 400 B.R. at 291-92 (the appropriate time to determine COMI is when the case commences); *In re British Am. Ins. Co. Ltd.*, 425 B.R. 884, 910 (Bankr. S.D. Fla. 2010) (Bankruptcy Code requires a temporal focus "for purposes of a court making a determination under section 1517(b)(1), can be *no earlier than the date the chapter 15 petition was filed*") (emphasis added). This concept is based on the use of the present tense in the statute. Specifically, section 1517(b)(1) provides that a foreign proceeding "shall be recognized as a foreign main proceeding if it *is pending* in the country where the debtor *has* the center of its main interests." 11 U.S.C. § 1517(b)(1) (emphasis added).

In *In re Fairfield Sentry Limited*, 440 B.R. 60 (Bankr. S.D.N.Y. 2010), *aff'd*, 2011 U.S. Dist. LEXIS 105770, a matter with similar facts to those before this Court, the Southern District of New York held that a BVI-chartered hedge fund liquidating in a BVI proceeding had its COMI in the BVI. It explained that "… given that the Debtors are incorporated in and maintain their registered offices in the BVI, the Court finds it more compelling that the Debtors' COMI lies in the BVI than in New York, or in any of the Debtors' other various international contacts." *In re Fairfield Sentry*, 440 B.R. at 65. Just like the *Fairfield Sentry* debtors, American

Pegasus SPC is a party to a liquidation proceeding in its home country. Its principal business activity is winding up its affairs, and this activity is centered in the Cayman Islands.

The Cayman Islands constitutes American Pegasus SPC's COMI. Since its launch in 2004, American Pegasus SPC's registered offices have at all times been located in the Cayman Islands. *See* Pearson Dec. ¶ 14. The SEC's Cease-and-Desist Order states that American Pegasus SPC is domiciled in the Cayman Islands. RJN Ex. A, p. 4, ¶ 6. As such, there is a presumption in favor of the Cayman Islands as American Pegasus SPC's COMI. This presumption is consistent with stakeholder expectations that the fund was registered in the Cayman Islands, which was clearly disclosed in its promotional materials, and, accordingly, was subject to liquidation proceedings in that jurisdiction. Pearson Dec. ¶¶ 35, 36. Importantly, the location of the Cayman Islands headquarters is a fact known, relied upon, and objectively ascertainable by third persons. Promotional materials, financial statements, reports, and other written materials identify the Cayman Islands as the location of American Pegasus SPC's business. Pearson Dec. ¶ 35.

Moreover, American Pegasus SPC's only "nerve center" or "headquarters" is the Cayman Islands. The Cayman Islands-based Petitioners, in their capacity as Joint Official Liquidators and officers of the Cayman Islands Grand Court, currently direct the administration and management of American Pegasus SPC under the auspices of the Cayman Islands Grand Court. Pearson ¶¶ 3, 36; RJN Ex. D. In addition, creditors and investor representatives have received notice from the Joint Official Liquidators regarding the Cayman Island Proceeding, apprising them that American Pegasus SPC's affairs are being managed in the Cayman Islands. Pearson Dec. ¶ 36.

In addition to the factors that are listed above, the record reflects a number of other objective facts that strongly point towards the Cayman Islands as American Pegasus SPC's COMI. Firstly, American Pegasus SPC's statutory books and records are, and always have been, located in the Cayman Islands. Secondly, American Pegasus SPC currently contracts for ongoing services from several providers that are organized under the laws of the Cayman Islands and have offices in the Cayman Islands. Thirdly, the Joint Official Liquidators are represented in matters relating to Cayman Islands law by a Cayman Islands law firm, Solomon Harris. Fourthly,

investors and creditors of the fund have engaged three separate Cayman legal counsel firms since the appointment of the Joint Official Liquidators to represent their interests and recognized that the forum for representation was in the Cayman Islands. Finally, two of American Pegasus's former independent directors reside in the Cayman Islands.[3] Pearson Dec. ¶ 37.

The COMI factors demonstrate that American Pegasus SPC's COMI is the Cayman Islands. No jurisdiction other than the Cayman Islands has a plausible claim as the COMI. American Pegasus SPC, for example, has no place of business in the U.S., much less a "principal place of business." Pearson Dec. ¶ 39. Petitioners' research has identified no case in which recognition of proceedings commenced in a corporate petitioner's jurisdiction of registration was denied where the debtor had no headquarters, place of business, or business operations outside of that jurisdiction. This Court consequently should conclude that the Cayman Island Proceeding should be recognized as a foreign main proceeding.

### D. In the Alternative, the Cayman Islands Proceeding Should Be Recognized as a Foreign Nonmain Proceeding

If the Court for some reason concludes that the Cayman Islands Proceeding should not be recognized as a foreign main proceeding, Petitioners request that this Court find that the proceeding is a foreign nonmain proceeding under section 1502(5). As stated above, section 1517 (a) provides that "an order recognizing a foreign proceeding shall be entered if […] such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502." 11 U.S.C. § 1517(a)(1). Section 1502(5) defines "foreign nonmain proceeding" as "a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment." 11 U.S.C. § 1502(5).

To qualify as a foreign nonmain proceeding, a debtor must have an establishment in the country in which the foreign proceeding is pending. *Id.* An "establishment" is defined in

---

[3] The Cayman independent directors resigned from the board on May 24, 2010 after Mr. Chui appointed two additional directors who were employed by LDG. The addition of those directors made the independent directors' vote obsolete and their role ineffective. When they resigned, the independent directors resigned noted that they had strong differences as to how the board should proceed and that the situation was no longer tenable. Pearson Dec. ¶ 38.

section 1502(2) as "any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. § 1502(2). While the Bankruptcy Code does not define "nontransitory economic activity," the place in which such activity is conducted has been interpreted to mean "a local place of business." *In re British Am. Ins. Co. Ltd.*, 425 B.R. at 914-15 (citations omitted). In order to have an "establishment" for the purposes of this statute, "the debtor must conduct business in that country." *Id*. at 915. Whether the debtor has an "establishment" in a country is also determined at the time of the filing of the Chapter 15 petition. *Id*.

Here, daily nontransitory economic activity relating to American Pegasus SPC is currently being carried out in the Cayman Islands. The Joint Official Liquidators have actively managed American Pegasus SPC's business and assets from the Cayman Islands offices of Deloitte & Touche since June 2011. They are winding up the affairs of American Pegasus SPC and attempting to maximize its assets for the benefit of its creditors. In addition, the Cayman Islands Grand Court is overseeing the Joint Official Liquidators and the winding up process. Pearson Dec. ¶ 40.

Thus, American Pegasus SPC has a "local place of business" and an "establishment" in the Cayman Islands. As a result, the Cayman Island proceeding should be recognized as a "foreign nonmain proceeding" within the meaning of section 1502(5) if the Court denies recognition of the Cayman Island Proceeding as a foreign main proceeding.

### E. The Petition Meets the Filing Requirements of Section 1515 of the Bankruptcy Code and of Rule 1007(a)(4) of the Bankruptcy Rules

Recognition of a foreign proceeding under Bankruptcy Code section 1517(a) requires that the petition meet section 1515's filing requirements. *See* 11 U.S.C. § 1517(a)(3). Sections 1515(b) and (c) require that the foreign representative file a certified copy of the decision commencing the foreign proceeding and appointing the foreign representative and a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative. *See* 11 U.S.C. § 1515(b), (c). The Petitioners have met these requirements. *See* RJN Ex. B (certified copy of Petition for Winding Up Order, commencing the Cayman Island Proceeding); RJN Ex. D (certified copy of Winding Up Order, authorizing the

Joint Official Liquidators to seek recognition); and 11 U.S.C. § 1515(c) Statement (Joint Official Liquidators' List of Foreign Proceedings With Respect To American Pegasus SPC).

In addition, the Petitioners have filed a list containing the names and addresses of all person or bodies authorized to administer the foreign proceedings of American Pegasus SPC and all parties to litigation pending in the United States in which the Debtor is a party, as required by Bankruptcy Rule 1007(a)(4)(B). *See* Joint Official Liquidators' List of Administrators, Parties, and Entities Pursuant to Federal Rule of Bankruptcy Procedure 1007(a)(4). Petitioners have filed a corporate ownership statement containing the information described in Rule 7007.1 of the Bankruptcy Rules, as required by Rule 1007(a)(4)(A). *See* Joint Official Liquidators' List of Corporate Ownership of American Pegasus SPC.

### F. Recognition of the Cayman Islands Proceeding Would Not Be Manifestly Contrary to U.S. Public Policy

Bankruptcy Code section 1517(a) notes that an order recognizing a foreign proceeding is subject to section 1506, which provides: "Nothing in this chapter prevents the court from refusing to take an action governed by this chapter if the action would be manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506.

No U.S. public policy would be contravened by granting the relief sought. Indeed, recognizing the Cayman Island Proceeding as a foreign main proceeding would advance one of Chapter 15's express objectives: fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other interested entities, including American Pegasus SPC, and the protection and maximization of its assets. *See* 11 U.S.C. § 1501(a). Chapter 15 will materially aid the Joint Official Liquidators' efforts to realize recoveries in the United States for the benefit of all of American Pegasus SPC's stakeholders. Pearson Dec. ¶ 43.

### II. Upon Recognition Of The Cayman Island Proceeding As A Foreign Main Proceeding, The Automatic Stay Applies Pursuant To Bankruptcy Code Section 1520(a)

When a foreign proceeding is recognized as a "foreign main proceeding," a foreign representative is automatically entitled to the benefits conferred by section 1520(a) of the Bankruptcy Code, including the automatic stay in section 362. *See* 11 U.S.C. § 1520(a)(1).

Section 1520(a)(1) of the Bankruptcy Code provides: "Upon the recognition of a foreign proceeding that is a foreign main proceeding, [...] sections 361 and 362 apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States .... *Id.* Accordingly, if this Court recognizes the Cayman Island Proceeding as a "foreign main proceeding," the automatic stay is applicable to all actions and proceedings against the debtor and its property in the United States. *See In re Spansion, Inc.*, 418 B.R. 84, 91 (Bankr. D. Del. 2009) (the stay automatically comes into effect upon recognition of a foreign main proceeding).

Application of the automatic stay is critical for the Joint Official Liquidators to effectively and properly administer American Pegasus SPC's assets in the United States. Specifically, the automatic stay will prevent LDG and Mr. Carter, and all other entities or individuals which hold American Pegasus SPC's property, from refusing to turn that property over to the Petitioners for the benefit of creditors. Moreover, it will prevent third parties from opportunistically trying to attach recoveries obtained in the United States by the Petitioners, thereby ensuring their orderly and equitable distribution in accordance with the Cayman Islands' insolvency law. Pearson Dec. ¶ 41.

Should the Court determine that the Cayman Islands Proceeding is a foreign main proceeding, the Joint Official Liquidators request entry of order instructing LDG and Mr. Carter and all other persons to immediately deliver to Petitioners all property of American Pegasus SPC, including without limitation, the auto loan and life settlement files and the proceeds of the loans. Any additional delay in getting the auto loans in the hands of a capable service reduces the expected recovery on these sub-prime loans. Moreover, Petitioners also request an order instructing LDG and Mr. Carter to deliver forthwith an accounting to the Joint Official Liquidators. Pearson Dec. ¶ 42.

## III. The Petitioners Request Necessary And Appropriate Relief Pursuant To Section 1521(a) Of The Bankruptcy Code

Upon recognition of the Cayman Islands Proceeding, whether as a foreign main or foreign nonmain proceeding, this Court is empowered to grant "any appropriate relief" necessary to effectuate Chapter 15's purpose and to protect American Pegasus SPC's assets or the interests

of its creditors. *See* 11 U.S.C. § 1521(a). Relief under section 1521(a) is available so long as the interests of the creditors and other interested entities, including the debtor and interested parties located outside of the United States, are sufficiently protected. *See* 11 U.S.C. § 1522(a). Moreover, if this Court recognizes the Cayman Islands Proceeding as a foreign nonmain proceeding, section 1521 relief is available where the Court is "satisfied that the relief relates to assets that, under the law of the United States, should be administered in the foreign nonmain proceeding or concerns information required in that proceeding." 11 U.S.C. § 1521(c).

Pursuant to section 1521(a), the Petitioners request that this Court enter an Order granting additional necessary relief.[4] Specifically, Petitioners seek entry of an order directing LDG and Mr. Carter to immediately deliver to them all property of American Pegasus SPC. LDG's and Mr. Carter's post-termination unjustifiable retention of the American Pegasus SPC property, including the loan files and the proceeds of the loans, must stop. The Joint Official Liquidators cannot properly administer the American Pegasus SPC estate without immediate access to this property. Although the Joint Official Liquidators have retained servicing companies with nationwide capacity to do the job that LDG and Mr. Carter failed to do, the transfer of the servicing is extremely difficult unless the files are turned over. Further, LDG and Mr. Carter should be ordered to turn over all proceeds of American Pegasus SPC's loans and an accounting. Pearson Dec. ¶¶ 13, 33, 42.

---

[4] 11 U.S.C. § 1521(a) provides that upon recognition of a foreign proceeding as a main or nonmain proceeding, "at the request of the foreign representative, grant any appropriate relief," including: "1) staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520(a); (2) staying execution against the debtor's assets to the extent it has not been stayed under section 1520(1); (3) suspending the right to transfer, encumber or otherwise dispose of any assets of the debtor to the extent this right has not been suspended under section 1520(a); (4) providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities; (5) entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative or another person, including an examiner, authorized by the court; (6) extending relief granted under section 1519(a); and (7) granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a)."

In addition to the order discussed above, Petitioners seek entry of an Order, without limitation: (i) applying section 362 of the Bankruptcy Code on a provisional basis pursuant to section 1519(a) and prohibiting all persons and entities from (a) refusing to turn over immediately to the Joint Official Liquidators American Pegasus SPC's property; (b) continuing any action or commencing any additional action, against or involving American Pegasus SPC, or its property, assets, or the proceeds thereof; (c) enforcing any judicial, quasi-judicial, administrative or regulatory judgment, assessment or order or arbitration award against American Pegasus SPC or its assets; (d) commencing or continuing any action to create, perfect or enforce any lien, set-off or other claim against American Pegasus SPC or against any of its property; or (e) managing or exercising control over American Pegasus SPC assets, wherever located, including, without limitation, within the United States, except as expressly authorized by the Foreign Representatives in writing; (ii) providing that the stay will continue indefinitely pursuant to section 1521(a)(1) if the Cayman Islands Proceeding is recognized as a foreign nonmain proceeding; (iii) authorizing the Foreign Representatives to seek discovery in connection with American Pegasus SPC's assets, affairs, rights, obligations or liabilities, pursuant to sections 1519(a)(3) and 1521(a)(4) of the Bankruptcy Code; and (iv) providing that Bankruptcy Rule 7062 will apply to any order denying recognition of these cases.

Petitioners request relief under section 1521(a) in order to assist the Cayman Islands Grand Court and the Petitioners in carrying out the effective administration of the Cayman Islands Proceeding, particularly if the Court recognizes the Cayman Islands Proceeding as a foreign nonmain proceeding. Without relief under section 1521(a), the Cayman Islands Grand Court would not be able to ensure the fair and efficient administration of the Cayman Islands Proceeding in a manner that protects the interests of all American Pegasus SPC creditors, nor would the Petitioners be able to protect and maximize, without interference, the value of American Pegasus SPC's assets in the United States for the benefit of American Pegasus SPC's creditors. This relief is necessary and appropriate to effectuate the purpose of Chapter 15.

**CONCLUSION**

For the foregoing reasons, the Petitioners respectfully request that this Court enter an Order: (i) recognizing the Cayman Islands Proceeding as a foreign main proceeding or, in the alternative, a foreign nonmain proceeding; (ii) recognizing the Petitioners as foreign representatives of the Cayman Islands Proceeding; (iii) recognizing the application of the automatic stay provided in section 362(a) pursuant to section 1520(a) of the Bankruptcy Code; (iv) granting the requested section 1521 relief including entry of an order directing LDG and Mr. Carter to immediately deliver to the Petitioners all property of American Pegasus SPC, including without limitation, auto loan and life settlement files and loan proceeds, as well as an accounting; and (v) granting such other relief as may be just and proper.

DATED: December 14, 2011      MICHELSON LAW GROUP


By:              /s/ Randy Michelson
                      Randy Michelson
               Attorneys for Stuart Sybersma
                and Michael Pearson,
               Joint Official Liquidators of
                American Pegasus SPC